887 P.2d 1076

**Neal HAUSAM, Plaintiff–Appellant,**

v.

**Wade SCHNABL, a single person; John L. Schnabl, aka Roy Schnabl and Pat Schnabl, husband and wife, David Schnabl and his wife "Jane Doe" Schnabl, if married, and R W Logging, a partnership, Defendants–Respondents.**

No. 20913.

Court of Appeals of Idaho.

Nov. 21, 1994.

Petition for Review Denied Jan. 19, 1995.

William M. Appleton, Coeur d'Alene, argued, for appellant.

Richard W. Kochansky, Coeur d'Alene, argued, for respondents.

WALTERS, Chief Judge.

This is an appeal from a judgment of the district court determining that John and Patricia Schnabl were not liable for money borrowed from the appellant, Neal Hausam, by the Schnabl's son, Wade, while Wade was managing his father's business. We hold that the district court erred in concluding that there was no unjust enrichment in this case. Accordingly, we reverse the judgment of the district court and remand for entry of judgment in favor of Hausam.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In October 1988, John Schnabl (John) established RW Logging as a sole proprietorship and opened a bank account in the business' name. In January 1989, John, experiencing health problems, placed his son Wade in charge of RW Logging. John testified at trial that Wade's authority included the authority to hire and fire employees, to seek logging contracts and to assign jobs. John further testified that although Wade did not have actual check-writing authority, Wade had the "unfettered ability to pay himself whatever he wanted" and that he did not review Wade's compensation. John also testified, however, that Wade was not authorized to write checks on behalf of RW Logging or to borrow money; the only individuals who could draw checks from the RW Logging account were John, his two daughters and the bookkeeper.

In January 1990, Wade borrowed $20,000 from Neal Hausam, requesting that the loan be made payable to RW Logging. In return, a promissory note dated January 29, 1990, was given to Hausam, reciting: "For value received, we, Wade Schnabl, and John L. Schnabl dba RW Logging, promise to pay Neal Hausem (sic) the sum of $28,000.00 (twenty eight thousand dollars) on, or before, July 31, 1990." Although the note purported to be signed by both Wade and John Schnabl, the district court found that John Schnabl's signature was not genuine but had been placed on the note by Wade without the knowledge of John. In January and February of 1990, three checks, one in the amount of $2,000 and two in the amount of $9,000 each, were deposited into the RW Logging account. All three checks were from Hausam and were payable to RW Logging.

Wade stopped managing RW Logging in January 1991, and the business ceased operations in February of 1991. When Wade refused to repay the loan, Hausam filed suit against Wade; John and his wife, Patricia Schnabl; David Schnabl and his wife, Cynthia ("Jane Doe") Schnabl; and RW Logging. In his complaint, Hausam alleged that RW Logging was a partnership whose partners were Wade, John and David Schnabl.

On November 2, 1992, a default judgment was entered against Wade in the sum of $37,794.41. On April 9, 1993, the district court granted summary judgment in favor of David and Cynthia Schnabl, dismissing the complaint as to them. Hausam did not appeal from the April 9, 1993, order.

A trial was held before the district court on the claim against John and Patricia Schnabl, and on July 28, 1993, the district court entered findings of fact and conclusions of law pursuant to I.R.C.P. 52(b). The court found that RW Logging was John's sole proprietorship, was not a partnership, and that Wade did not have authority to borrow money on behalf of RW Logging. The district court also rejected Hausam's contention that John and Patricia were unjustly enriched by Hausam's loan. On September 13, 1993, the district court issued its judgment dismissing with prejudice Hausam's claim against John and Patricia Schnabl. Hausam appeals from the judgment.

## II.

### DISCUSSION

We first note the district court's finding that Patricia Schnabl never actively participated in the business of RW Logging and that her involvement in this case is solely by reason of the fact that she is John's wife. We accept this finding and therefore discuss Hausam's contentions only as they relate to John.

A. DID THE AGENCY RELATIONSHIP BETWEEN JOHN AND WADE INCLUDE THE AUTHORITY FOR WADE TO BORROW MONEY ON BEHALF OF RW LOGGING?

Hausam argues that the district court erred in finding that Wade was not authorized to borrow money on behalf of RW Logging. Determination of this issue hinges on whether there was an agency relationship between Wade and John pursuant to which Wade had authority to borrow money for the company and to sign a promissory note on behalf of John and his proprietorship, RW Logging.

■ The existence of an agency relationship is a question for the trier of fact to resolve from the evidence. *Adkison Corp. v. American Bldg. Co.*, 107 Idaho 406, 409, 690 P.2d 341, 344 (1984); *see also Bailey v. Ness*, 109 Idaho 495, 498, 708 P.2d 900, 903 (1985); *Hilt v. Draper*, 122 Idaho 612, 616, 836 P.2d 558, 562 (Ct.App.1992). This Court will not disturb a district court's finding of fact unless it is clearly erroneous. I.R.C.P. 52(a). The burden of proving the existence or extent of an agency rests on the party alleging it. *Gissel v. State*, 111 Idaho 725, 729, 727 P.2d 1153, 1157 (1986); *Transamerica Leasing Corp. v. Van's Realty Co.*, 91 Idaho 510, 517, 427 P.2d 284, 291 (1967). In *Bailey v. Ness*, 109 Idaho at 497, 708 P.2d at 902, the Idaho Supreme Court explained the nature of an agency relationship and how it arises:

> The three types of agencies are: express authority, implied authority, and apparent authority.
>
> Both express and implied authority are forms of actual authority. Express authority refers to that authority which the principal has explicitly granted the agent to act in the principal's name. Implied authority refers to that authority "which is necessary, usual, and proper to accomplish or perform" the express authority delegated to the agent by the principal.
>
> Apparent authority differs from actual authority. It is created when the *principal* "voluntarily places an agent in such a position that a person of ordinary prudence, conversant with the business usages and the nature of a particular business, is justified in believing that the agent is acting pursuant to existing authority." [Citations omitted.]

In the instant case, there was clearly express authority for Wade to operate his father's business. However, there was not express authority for Wade to borrow money on behalf of his father's business. Therefore, Wade's authority to borrow money, if it existed, must have arisen from either implied or apparent authority.

### 1. Implied Authority

■ Hausam asserts that "included in the expressed authority to run a business is the implied authority to acquire the money necessary to operate that business." He argues that this implied authority falls within that which is necessary, usual, and proper to accomplish or perform the express authority delegated to the agent by the principal. *Bailey*, 109 Idaho at 497, 708 P.2d at 902; *Clark v. Gneiting*, 95 Idaho 10, 12, 501 P.2d 278, 280 (1972). However, the district court found that although John had placed Wade in charge of the day-to-day operations of the business, there was no evidence presented that the authority to borrow money was necessary to perform these functions. We conclude that the district court was correct.

John's uncontradicted testimony was that the business did not need to borrow money at the time Wade obtained the loan from Hausam. In fact, from January 10, 1990, through March 6, 1990, John received $105,579.31 pursuant to a contract with DAW Forest Products Company (DAW) and deposited the money into the RW Logging account. The district court found that RW Logging was paid a total of $316,000 by DAW in 1990. John testified that even if the company had been in need of money, he would not have borrowed it from a "stranger."

Based on the foregoing, we hold that the loan was not necessary to the functioning of the day-to-day operations of RW Logging and that there was no implied authority for Wade to borrow money on behalf of the business.

### 2. *Apparent Authority*

As noted earlier, apparent authority exists when the principal voluntarily places an agent in such a position that a person of ordinary prudence, conversant with the business usages and the nature of a particular business, is justified in believing that the agent is acting pursuant to existing authority. *Bailey,* 109 Idaho at 497, 708 P.2d at 902. One must use reasonable diligence to ascertain the agent's authority. *Idaho Title Co. v. American States Ins. Co.,* 96 Idaho 465, 468, 531 P.2d 227, 230 (1975); *Podolan v. Idaho Legal Aid Services, Inc.,* 123 Idaho 937, 944, 854 P.2d 280, 287 (Ct.App.1993). Reasonable diligence encompasses a duty to inquire with the principal about the agent's authority. *Podolan,* 123 Idaho at 944, 854 P.2d at 287.

The district court found that Hausam did not make any independent investigation of the nature and financial condition of RW Logging prior to making the loan, but instead, obtained his information about RW Logging solely from discussions with Wade and Wade's girlfriend. Indeed, Hausam testified that he believed that RW Logging was a partnership, but that there were no indications of a partnership aside from the statements made by Wade and his girlfriend.

Hausam was not a novice at lending money, nor was he a novice at understanding business matters. Hausam testified that he was not only an engineer, but was also a real estate broker who had made real estate deals. He owned an engineering company, a real estate company and a testing laboratory in Alaska; had done land development in Alaska; and had loaned money to a delicatessen, a doughnut shop as well as to various real estate ventures. Despite Hausam's experience, he lent $20,000 to an entity about which he knew or discovered nothing. These facts lead to the conclusion that Hausam did not "inquire with the principal about the agent's authority," *Podolan, supra,* nor did he use "reasonable diligence" to ascertain the extent of Wade's authority. *Idaho Title Co., supra.*

Moreover, the apparent power of the agent is to be determined by the acts of the principal, not by the acts of the agent.

*Brunette v. Idaho Veneer Co.,* 86 Idaho 193, 198, 384 P.2d 233, 236 (1963); *Hieb v. Minnesota Farmers Union,* 105 Idaho 694, 697, 672 P.2d 572, 575 (Ct.App.1983). The declarations of an alleged agent, standing alone, are insufficient to prove the grant of power exercised by the agent and to bind the principal to third parties. *Clark,* 95 Idaho at 12, 501 P.2d at 280; *see also Bailey,* 109 Idaho at 497–98, 708 P.2d at 902–03; *Killinger v. Iest,* 91 Idaho 571, 575, 428 P.2d 490, 494 (1967); *Brunette,* 86 Idaho at 199, 384 P.2d at 236; *Hilt,* 122 Idaho at 618, 836 P.2d at 564. To establish apparent authority, the purported principal must do something to lead the third party to believe that the ostensible agent has authority. *Hilt,* 122 Idaho at 618, 836 P.2d at 564.

In the instant case, John placed Wade in charge of the day-to-day operations of RW Logging. It cannot be said that such an action could lead Hausam to believe that Wade had authority to borrow money on behalf of RW Logging. As this Court has stated, "an agent with actual authority for one purpose does not thereby become an apparent agent for all other types of transactions." *Hieb,* 105 Idaho at 698, 672 P.2d at 576. We conclude that Wade was not cloaked with apparent authority to borrow money from Hausam on behalf of RW Logging and that the district court's finding to that effect was correct. Accordingly, we uphold the district court's determination that John was not obligated on the promissory note.

### B. WAS JOHN UNJUSTLY ENRICHED BY HAUSAM'S LOAN?

The unjust enrichment doctrine, also referred to as quasi-contract, contract implied in law, or restitution, allows recovery where the defendant has received a benefit from the plaintiff which it would be inequitable to retain without compensating the plaintiff for the value of the benefit. *Continental Forest Products, Inc. v. Chandler,* 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974); *Idaho Lumber, Inc. v. Buck,* 109 Idaho 737, 744, 710 P.2d 647, 654 (Ct.App.1993). The recipient must make restitution to the party giving

the benefit only to the extent that, as between the two, the benefit would be unjust for the recipient to retain. *Idaho Lumber*, 109 Idaho at 744, 710 P.2d at 654.

Hausam contends that the district court erred in finding that John was not unjustly enriched by Hausam's loan. He argues that his loan was used to pay the expenses of RW Logging, which enabled the business to continue its operation. Hausam further asserts that although John ultimately lost money in his business, the losses were $20,000 less than they would have been had Wade not borrowed that amount from him.

 The burden was upon Hausam to prove facts showing that John received a benefit and the amount of that benefit. *Gillette v. Storm Circle Ranch*, 101 Idaho 663, 667, 619 P.2d 1116, 1120 (1980); *Hartwell Corp. v. Smith*, 107 Idaho 134, 139, 686 P.2d 79, 84–85 (Ct.App.1984). The district court concluded that Hausam failed to provide the proof necessary to establish the value of the benefit, if any, actually conferred upon John. In reaching this conclusion, the district court took into account the fact that Hausam's loan was deposited into the RW Logging account along with more than $316,000 received from DAW in 1990. The district court also found that the amount paid to Wade from the RW account in 1990 was unknown and that John was paid $2,630.80 in wages. Based on these factual findings, the court concluded that although proceeds from the loan might have been used to pay certain obligations of the business, "it appear[ed] that someone other than John received the benefit from the business."

We conclude that the district court's analysis was improper. The fact that Wade might have withdrawn the loan amount from the RW Logging account, and used it for his own purposes or to pay business creditors, does not mean that John received no benefit from the loan. A benefit inured to John as soon as Hausam's loan was deposited into the business account. Once the loan was deposited, John could have withdrawn it from the account or could have used it for the business. Alternatively, John also could have left the amount of the loan in the account to accrue interest from which he would benefit.

If Wade abused his father's trust and paid himself excessively from the RW Logging account, John's recourse lies against his son; such action on the part of his son does not negate the fact that Hausam's loan conferred a benefit to RW Logging and to John.

We hold that John received a benefit from Hausam which would be inequitable for John to retain without compensating Hausam for its value. Hausam is entitled to judgment on his claim of unjust enrichment.

## C. ATTORNEY FEES

 Hausam also argues that the district court erred in awarding costs and attorney fees to John and Patricia Schnabl. However, the record does not include any order or judgment awarding costs or attorney fees in this case. Error will not be presumed on appeal, but must be affirmatively shown on the record by appellant. *Rutter v. McLaughlin*, 101 Idaho 292, 293, 612 P.2d 135, 136 (1980); *Dawson v. Mead*, 98 Idaho 1, 3, 557 P.2d 595, 597 (1976). Where an incomplete record is presented to this Court, the missing portions of that record are presumed to support the action of the trial court. *Rutter*, 101 Idaho at 293, 612 P.2d at 136; *see also Stewart v. Arrington Constr. Co.*, 92 Idaho 526, 532, 446 P.2d 895, 901 (1968). However, if such an award was made in this case and was predicated upon a finding that the Schnabls were the prevailing party, then that award must be set aside in light of our conclusion that Hausam prevailed and was entitled to a judgment based upon the theory of unjust enrichment.

 Hausam also seeks attorney fees on appeal, pursuant to I.C. § 12–120(3). This provision allows recovery of attorney fees in actions for collection on monies due as a result of a commercial transaction. Hausam argues that his loan to RW Logging was such a transaction. Our Supreme Court, however, has held that the award of attorney fees is not warranted every time a commercial transaction is remotely connected with the case. *Brower v. E. I. DuPont De Nemours & Co.*, 117 Idaho 780, 792 P.2d 345 (1990).

Rather, the test is whether the commercial transaction comprises the gravamen of the

lawsuit. Attorney's fees are not appropriate under I.C. § 12–120(3) unless the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover. To hold otherwise would be to convert the award of attorney's fees from an exceptional remedy to a matter of right in virtually every lawsuit filed.

117 Idaho at 784, 792 P.2d at 349. Here, Hausam sought recovery on several theories, but prevailed only on the equitable ground of unjust enrichment. The "commercial transaction" between Hausam and Wade Schnabl, to which John Schnabl was not directly a party, does not serve as the basis for Hausam's recovery. John Schnabl's indirect connection by having received a benefit inequitable for him to retain fits the observation of the court in *Brower:* "We cannot say that this case revolves around a commercial transaction sufficient to implicate the terms of I.C. § 12–120(3)." Accordingly, we conclude that an award of attorney fees to Hausam on appeal under I.C. § 12–120(3) would not be proper.

### III.

### CONCLUSION

Hausam has failed to show that the district court erred in concluding that Wade did not have authority to borrow money on behalf of RW Logging. However, based on the facts of this case, we hold that John was unjustly enriched by Hausam's loan. Accordingly, we reverse the district court's judgment and remand this case for entry of judgment in favor of Hausam on his unjust enrichment claim.

Costs, but not attorney fees, on appeal are awarded to the appellant, Neal Hausam, to be determined under I.A.R. 40.

LANSING and PERRY, JJ., concur.