**Thomas RUFFIN, Jr., Appellant,**

v.

**TEMPLE CHURCH OF GOD IN CHRIST, INC., Appellee.**

No. 98–CV–970.

District of Columbia Court of Appeals.

Argued Oct. 21, 1999.

Decided April 6, 2000.

Thomas Ruffin, Jr., pro se.

Jason Lederstein, Washington, DC, for appellee.

Before STEADMAN, FARRELL and REID, Associate Judges.

STEADMAN, Associate Judge:

In this breach of contract case, plaintiff Thomas Ruffin, Jr., an attorney, appeals from a judgment as a matter of law under D.C. Super Ct. Civ. R. 50. The trial court reasoned that an admitted dispute between the trustees of the appellee church and the church's pastor precluded a finding of implied or apparent authority in the pastor to contract for Ruffin's legal services. Having reviewed the record, we hold that there was sufficient evidence upon which a reasonable jury could find that such implied authority existed.[1]

## I.

The evidence at trial, viewed in the light most favorable to appellant, revealed the following situation. From 1923 until the appointment of Frank Morris as pastor in 1992, appellee Temple Church of God in Christ ("the Church") had a long history of pastorship under a single man—the founder of the Church, Samuel Kelsey. While Kelsey had run the Church with the help of a board of trustees, during his tenure Kelsey also entered into a number of significant contracts on behalf of the Church without specific approval. In 1992, a bishop of the Church publicly, in the presence of the board of trustees and the Church congregation, including Ruffin, appointed Morris as co-pastor without objection, to take over for the ailing Kelsey. The bishop gave what Morris thought was "full authority to run the church." Shortly after the appointment, a conflict began to arise between the Church's board and Morris with regard to aspects of fiscal responsibility and powers of appointment within the Church.

In early 1993, Ruffin was contacted by Morris to help reconcile the internal dispute, and Ruffin entered an oral contract with Morris to perform legal services on behalf of the Church. Between January 4 and March 11, 1993, Ruffin worked on drafting new by-laws for the Church and engaged in other activities designed to alleviate the rift. However, when Ruffin presented the Church with his bill of about $8,000, payment was refused. The Church asserted that as a non-profit organization, its board of trustees had sole authority to contract, and that the board did not authorize or reasonably appear to authorize Morris to enter into the contract for Ruffin's legal services. Ruffin brought suit to recover his fees.

At the close of Ruffin's case-in-chief, the Church moved for a directed verdict. The motion was denied by the trial court because, according to the trial judge,

> a reasonable juror could decide ... based on the testimony ... that there was a course of conduct over time in which the board of trustees had essentially delegated to the pastor the busi-

1. We therefore need not reach the issue of apparent authority.

ness end of running the church, and that that had not been formally rescinded at the time in January of '93 when Mr. Ruffin and the pastor entered into their contract.... [O]n that ground alone, the motion should be ... denied. Whether the pastor did or did not have authority, a reasonable juror could conclude that the course of conduct over those years established the pastor's authority.

During the defendant's case-in-chief no evidence was introduced to demonstrate that the board expressly rescinded any and all contractual authority of the pastor.

The jury was instructed that under the law, the Church's board of trustees had ultimate control of the Church.[2] However, the jury was also instructed, under the doctrines of implied and apparent authority, that if either Morris or Ruffin reasonably believed authority existed for Morris to enter into the contract on behalf of the Church, the Church would be liable on the contract.[3] The jury returned a verdict in favor of Ruffin.[4]

Following the verdict, the defendant moved for judgment as a matter of law, or in the alternative a new trial or amendment of the judgment or remittitur. The court granted the motion for judgment in a one-paragraph order, stating:

> That given the unequivocal evidence that the Board of Trustees and Pastor Morris were locked in a power struggle for control of the financial management of the Church and that the Board was disputing Pastor Morris' claimed authori-

ty—and that plaintiff was fully aware of the dispute before he entered into the contract at issue—no reasonable juror could conclude that the Pastor had either implied or apparent authority to contract with plaintiff for legal services.

Ruffin now appeals that order.[5]

## II.

■ The requisites for entering judgment as a matter of law following a contrary jury verdict (formerly termed judgment notwithstanding the verdict), as well as our standard of review of a grant of such a judgment, are well defined.

> A judgment notwithstanding the verdict of the jury is appropriate only where no reasonable person, viewing the evidence in the light most favorable to the prevailing party, could reach a verdict in favor of that party. When the case turns on disputed factual issues and credibility determinations, the case is for the jury to decide. If reasonable persons might differ, the issue should be submitted to the jury. In reviewing a motion for judgment as a matter of law after a jury verdict, this court applies the same standard as the trial court.

*Durphy v. Kaiser Found., Health Plan of Mid–Atlantic States, Inc.*, 698 A.2d 459, 465 (D.C.1997) (internal citations and quotations omitted). Thus, we could not affirm the trial court's grant of appellee's motion unless no reasonable juror could find either implied or apparent authority.

---

2. The court cited D.C.Code § 29–518 (1996), and Ruffin on appeal does not challenge this interpretation of the law.

3. We read the instructions as a whole, in light of the evidence presented and the law. *See, e.g., Doe v. Georgetown Center (II), Inc.*, 708 A.2d 255, 257 (D.C.1998) (instructions read as a whole); *King v. Kidd*, 640 A.2d 656, 666 (D.C.1993) (in evaluating reasonableness of jury verdict, instructions, verdict form and evidence are all considered).

4. Although the verdict form was not included in the record, post-trial motions, the trial

court's order directing judgment as a matter of law, and the briefing of both parties all indicate that the jury had found in Ruffin's favor under both theories of liability.

5. Following the grant of judgment as a matter of law, Ruffin filed a motion for judgment based on quantum meruit, which was decided and denied by the trial court. Although Ruffin also appeals the denial of that motion, because we reinstate the jury verdict in his favor, we do not consider that argument further.

As with our standard of review, the doctrine of implied authority has been defined by this court.

> "Implied authority is actual authority inferred from the circumstances, such as the relationship between the parties and conduct of the principal . toward the agent manifesting the principal's consent to have the agent act for him." *Lewis v. Washington Metro. Area Transit Auth.*, 463 A.2d 666, 669 (D.C.1983). Implied authority, therefore, exists when the act of "the servant or agent is incidental to authorized conduct and furthers the master's business. A servant or agent is authorized to do anything which is reasonably regarded as incidental to the work specifically directed or which is usually done in connection with such work." *Presley* [*v. Commercial Credit Corp.*, 177 A.2d 916, 918 (D.C.Mun.App. 1962)].

*Sigal Const. Corp. v. Stanbury*, 586 A.2d 1204, 1217–18 (D.C.1991).

At trial, plaintiff introduced evidence intended to show that, although there was a dispute between the Church's board of trustees and the newly-appointed Pastor Morris, there were reasonable grounds for the pastor and Ruffin to believe that authority to enter into this particular contract existed. Ruffin produced testimony that reflected Morris' belief, based on past practice and the bishop's public statements, that Morris "would have the authority to run the church." Morris also testified regarding specific evidence of the prior pattern and practice of the pastor, exercised by Pastor Kelsey during his seventy-year tenure, to make contracts of reasonable size without explicit prior board approval. Thomas Ruffin, Sr., appellant's father and a former member of the board of trustees, also testified regarding the pastor's authority within the Church, as reflected by prior practices. In addition, the appellant testified and introduced evidence which revealed that during his employment period under the contract, he had held himself out to the board of trustees, and the public' as an "attorney for the Temple Church of God in Christ," without objection by the board.

Evidence was also admitted that tended to show that the pastors of the Church, including Pastor Morris, were considered "chief executive officers" of the Church, having the "right to execute that office as [the pastor] sees fit."[6] The general implications of that role was significant and supportive to a claim of implied authority. As we have previously stated:

> Where a person is appointed to a recognized position such as the president or manager of a corporation, or the cashier of a bank, or is given a specific authority in general terms ... he [or she] is thereby given authority to do the various matters which by business custom such persons normally have....

*Sigal, supra,* 586 A.2d at 1218 (quoting W. SEAVEY, AGENCY, § 8, at 12–13 (1964)). That a chief executive officer would "normally" have the authority to contract with an attorney to assist the corporation in resolving internal management issues is well within the permissible understanding of a juror, if not uncontestable on its face.

Despite the view of the trial court and the argument of the Church to the contrary, we must conclude that the mere fact that a "power struggle" between the board and the pastor was underway does not, in and of itself, necessarily defeat the implication of authority grounded in seven decades of prior practice with respect to . the specific contract at issue here. The

6. Aside from the evidence discussed herein, Ruffin also attempted to introduce the Church's official manual, to further reflect that the pastor was the "chief executive officer" of the Church. The trial court, however, granted the Church's motion to exclude the manual on the grounds that delving into its meaning would violate First Amendment principles. Because we reinstate the jury verdict in Ruffin's favor we need not reach his argument that the First Amendment did not mandate the manual's exclusion.

focus on the narrow time frame just prior to Ruffin's engagement ignores both the import of this long background relationship between the Church and its pastor, and the lack of any explicit revocation of the authority to contract. Because of the history of the pastoral authority and the testimony of Morris and Ruffin, the jury could have reasonably concluded that authority to contract had been delegated to the pastor of the Church, and that Morris' appointment did nothing to alter the arrangement.[7]

The defendants offered no evidence demonstrating any clear revocation of all such authority.[8] *See Lewis, supra,* 463 A.2d at 669–70 (principal's prior actions may give rise to reasonable inference that agent has present authority); *see also Moehlenkamp v. Shatz,* 396 N.E.2d 433, 437 (Ind.App.1979) ("[I]n light of the long history of [defendant's] conduct of his wife's business with her tacit approval, coupled with her failure to effectively revoke [defendant's] implied authority to sign her name by dissenting to his earlier execution of the bank's note and mortgage on her behalf, there is substantial evidence of probative value to support ... the theory of implied authority.") Had the Board of Trustees intended to exclude the specific authority to contract from the scope of the pastor's authority, they had every right and opportunity to do so under its

control concededly granted by D.C.Code § 29–518. Their silence on this issue, both before and during Ruffin's contract, permitted the inference that the authority once held by Pastor Kelsey continued, at least to some extent, in Pastor Morris.[9] *Sigal, supra,* 586 A.2d at 1218.

This is not to say that the known dispute between the pastor and the board would have no bearing on the extent to which the pastor could reasonably conclude that he continued to possess the full implied authority vested in his predecessor. Certainly that was not true as to signatory authority. See *supra,* note 8. Furthermore, it could be questioned whether the pastor could consider that he had the continued right to bind the Church on, say, significant contracts for church acquisitions or remodeling or the like. The present focus, however, must be on the specific contract in question here: one in which the pastor of a church, seeking to reconcile differences with the board of trustees over their respective areas of authority, responsibility and control, seeks to employ an attorney under a contract of relatively minimal cost to further the process of bringing the church, its board, and its pastor into harmony again. We think a jury could reasonably find, on the evidence presented here, that the pastor could conclude that he retained implied authority to execute such a contract on behalf of the Church.

---

7. The trial court correctly made this very point in denying the defendant's initial motion for directed verdict. See *supra.*

8. The Church introduced a resolution by the board, passed in December, 1992, which ostensibly vested sole signatory authority over accounts and investments in the board. However, such evidence did not compel the jury to find that all implied authority of Morris to *contract* had been revoked. The powers are distinct. *See, e.g., Hausam v. Schnabl,* 126 Idaho 569, 887 P.2d 1076, 1078–79 (Idaho App.1994) (although agent had authority to run business, including "the authority to hire and fire employees, to seek ... contracts

and to assign jobs," agent's execution of a promissory note was invalid because principal did not grant authority to agent to write checks or withdraw money).

9. This should not be confused with a conclusion of liability based on specific acquiescence or ratification—theories not presented to the jury. Rather the board's relative silence in the face of Ruffin's asserted representation of the Church speaks to the failure of the board to effectively rescind all contractual authority previously granted to the pastor, whether that prior grant was explicit or implied through acquiescence itself.

For the foregoing reasons we reverse the trial court's grant of judgment as a matter of law and reinstate the jury verdict.[10]

*So Ordered.*

---

**10.** Appellee suggests that in any event, we should remand to the trial court for a ruling on its motion for a new trial or remittitur. We see no purpose to be served by a remand. With respect to the motion for a new trial, the trial court's entry of judgment as a matter of law was based on its conclusion as to the legal effect of the evidence of a power struggle. We see no basis on which the trial court would have concluded that the verdict was otherwise against the great weight of the evidence, or that "justice would miscarry if the verdict were allowed to stand." *Gebremdhin v. Avis Rent–A–Car System, Inc.,* 689 A.2d 1202, 1204 (D.C.1997) (quotation omitted); *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.,* 466 F.2d 179, 186–87 (8th Cir.1972) (declining to remand for consideration of motion for new trial where judgment as a matter of law was erroneously entered because evidence was such that reasonable jurors could have differed and there was no "significant weight factor favoring the defendant"). With respect to the motion for remittitur, the hours worked by Ruffin under the contract (one-hundred seven), and his pay rate under the contract ($75.00 per hour) were undisputed at trial. As such, the jury verdict of $8,025.00, plus interest, simply reflected the calculation of fees under the contract. *See* Super. Ct. Civ. R. 54(c) (1998); *Miller v. District of Columbia,* 479 A.2d 329, 331 (D.C.1984).