# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38121

THOMAS E. STEVENSON and VICKI JAN STEVENSON, husband and wife,

Plaintiffs-Appellants-Cross Respondents,

v.

WINDERMERE REAL ESTATE/CAPITAL GROUP, INC., an Idaho corporation.

Defendant-Respondent-Cross Appellant,

and

323 JEFFERSON LLC, an Idaho limited liability company,

Defendant.

Boise, January 2012 Term

2012 Opinion No. 55

Filed: March 22, 2012

Stephen Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

The decision of the district court is <u>affirmed</u>.

Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Boise, for appellants. Robert B. Burns argued.

Risch Pisca, PLLC, Boise, for respondent. Jason Risch argued.

_____

HORTON, Justice.

Real estate purchasers Thomas and Vicki Stevenson (the Stevensons) appeal the district court's grant of summary judgment dismissing their unjust enrichment claim against Windermere Capital Group (Windermere), broker to seller 323 Jefferson, LLC (Jefferson). The Stevensons also appeal the district court's award of attorney fees to Windermere pursuant to I.C. § 12-121. Windermere cross-appeals the district court's denial of its request for attorney fees pursuant to I.C. § 12-120(1). We affirm.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Stevensons desired to purchase a condominium from Jefferson, and the parties executed a Real Estate Purchase and Sale Agreement (REPSA) for that purpose. Pursuant to the REPSA, the Stevensons deposited $38,000 earnest money with Jefferson's broker, Windermere. Upon the Stevensons' written authorization, Windermere transferred the funds to Jefferson. Jefferson then paid Windermere a $9,500 partial commission pursuant to an Exclusive Seller Representation Agreement (Representation Agreement), which obligated Jefferson to pay Windermere a commission whenever a ready, willing, and able purchaser was procured. Jefferson decided not to sell the condominium to the Stevensons and notified them that it was terminating the REPSA.

The REPSA specified remedies upon default by either of the parties to the agreement. In the event that Jefferson failed to comply with any term of the agreement, the Stevensons were "entitled to the full return of the Deposit, together with any interest accrued thereon." Despite this unambiguous provision, Jefferson failed to return the deposit. The Stevensons filed suit against both Jefferson and Windermere. Their complaint alleged that Jefferson breached the REPSA and also advanced a claim of unjust enrichment against both Jefferson and Windermere. The Stevensons also asserted that the REPSA was unenforceable because it did not contain an adequate legal description. Jefferson settled with the Stevensons, agreeing to refund the Stevensons' earnest money, less the $9,500 commission paid to Windermere.[1]

Windermere answered and cross-claimed[2] against Jefferson, alleging two counts of breach of contract, two counts of unjust enrichment and one count of fraud. Windermere later moved for summary judgment as to the Stevensons' unjust enrichment claim. After receiving oral argument on the motion, the district court ruled from the bench. Since the Stevensons

---

[1] In the Settlement Agreement, Jefferson purported to acknowledge that "the Stevensons may also recover under their unjust enrichment claim from Windermere." We are not surprised that a party who has received an advance of funds that does not wish to return those funds would suggest that someone else should pay. We are, however, surprised that the Stevensons would forego their clear right "to the full return of the Deposit, together with any interest accrued thereon" in apparent reliance on Jefferson's statement that Windermere ought to pay.

We note that the Stevensons appear to have operated under the mistaken belief that if a legal description in a contract is inadequate for purposes of obtaining specific performance for the conveyance of real property, then all provisions in the agreement are unenforceable. Not surprisingly, they do not cite authority for this proposition. It is clear that the Stevensons had the ability to bring an action for rescission against Jefferson and thereby recover both their deposit and attorney fees. *O'Connor v. Harger Const., Inc.*, 145 Idaho 904, 912, 188 P.3d 846, 854 (2008). Likewise, the Stevensons appear to have disregarded their ability to assert their vendee lien rights. I.C. § 45-804; *Benz v. D.L. Evans Bank*, 152 Idaho 215, 268 P.3d 1167 (2012).

[2] Although styled as a counterclaim, Jefferson was Windermere's co-defendant. Accordingly, this action is properly characterized as a cross-claim. I.R.C.P. 13(g).

neither disputed that the Representation Agreement entitled Windermere to commissions nor asserted they were a party to that Agreement, the court found there were no disputed issues of material fact. The court concluded that Windermere was entitled to judgment as a matter of law because the Stevensons had not conferred a benefit upon Windermere and it was just for Windermere to retain a commission to which it was contractually entitled. The court entered an order dismissing the Stevensons' claim against Windermere with prejudice, certifying the order as a final judgment pursuant to I.R.C.P. 54(b). In a subsequent order, the district court made a written finding that the Stevensons had pursued their claim against Windermere unreasonably and without foundation and granted Windermere's request for attorney fees pursuant to I.C. § 12-121. However, the court denied Windermere's request for fees pursuant to I.C. § 12-120(1), holding that "the amount pled was in excess of $25,000."

The Stevensons timely appealed the district court's order dismissing their claim against Windermere and the award of attorney fees. Windermere cross-appealed, challenging the court's refusal to award fees pursuant to I.C. § 12-120(1). Windermere seeks attorney fees on appeal.

## II. STANDARD OF REVIEW

This Court applies the same standard as does a trial court when it rules upon a motion for summary judgment. *Read v. Harvey*, 141 Idaho 497, 499, 112 P.3d 785, 787 (2005). Thus, we construe all disputed facts and draw all reasonable inferences in favor of the nonmoving party. *Sprinkler Irr. Co., Inc. v. John Deere Ins. Co., Inc.*, 139 Idaho 691, 695-96, 85 P.3d 667, 671-72 (2004). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

## III. ANALYSIS

**A. The district court properly granted summary judgment dismissing the Stevensons' unjust enrichment claim because the Stevensons did not confer a benefit upon Windermere.**

The district court dismissed the Stevensons' unjust enrichment claim on the grounds that the Stevensons failed to present evidence that they conferred a benefit upon Windermere and that it would be inequitable for Windermere to retain the commission received from Jefferson. The Stevensons argue that the district court erred in so holding because the REPSA was void for lack of an adequate legal description, and that Windermere was unjustly enriched when Jefferson conveyed $9,500 to Windermere without the Stevensons' consent. We agree with the district

3

court that the Stevensons provided no evidence to support their contention that they conferred a benefit upon Windermere.

Unjust enrichment exists where "(1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Vanderford Co., Inc. v. Knudson*, 144 Idaho 547, 558, 165 P.3d 261, 272 (2007) (citing *Aberdeen–Springfield Canal Co. v. Peiper*, 133 Idaho 82, 88, 982 P.2d 917, 923 (1999)). "The substance of an action for unjust enrichment lies in a promise, implied by law, that a party will render to the person entitled thereto that which in equity and good conscience belongs to the latter." *Smith v. Smith*, 95 Idaho 477, 484, 511 P.2d 294, 301 (1973). In the present case, the Stevensons conferred a benefit to Jefferson in the form of a $38,000 deposit. Jefferson was free to utilize those funds in any fashion that it wished, subject of course to the REPSA, which obligated Jefferson to convey the condominium to the Stevensons upon fulfillment of the terms and conditions of that Agreement or to refund the deposit and any accrued interest. Windermere was not a party to the REPSA.[3]

It is true that Jefferson conferred a benefit on Windermere. The Stevensons' argument, reduced to its essence, is that because they conferred a benefit upon Jefferson, and Jefferson conferred a benefit upon Windermere, they can cut out the middleman and directly recover from Windermere for unjust enrichment. In support of this theory, the Stevensons cite *Hausam v. Schnabl*, 126 Idaho 569, 574, 887 P.2d 1076, 1081 (Ct. App. 1994), *Beco Const. Co., Inc. v. Bannock Paving Co., Inc.*, 118 Idaho 463, 797 P.2d 863 (1990) and *Harris, Inc. v. Foxhollow Const. & Trucking, Inc.*, 151 Idaho 761, 264 P.3d 400 (2011). These decisions do not support the Stevensons' claims.

The Stevensons assert that *Hausam* stands for the proposition that an unjust enrichment claim may be maintained against Windermere even though Windermere was not a party to the REPSA. In *Hausam*, Schnabl entrusted his son with the operation of his company, RW Logging, giving the son "unfettered ability to pay himself whatever he wanted." 126 Idaho at 571, 887 P.2d at 1078. The son obtained a loan for RW Logging from Hausam without authority to do so. *Id.* at 572-73, 887 P.2d at 1079-80. The loan proceeds were then deposited in the company's

---

[3] Although the Stevensons devote a substantial portion of their briefing to the question whether the REPSA was enforceable due to the lack of an adequate legal description, the REPSA is not an agreement between the Stevensons and Windermere, and its enforceability is irrelevant to the issue on appeal.

4

bank account. The trial court rejected Hausam's claim for unjust enrichment, finding that "it appear[ed] that someone other than [Schnabl] received the benefit from the business." *Id*. at 574, 887 P.2d at 1081 (first alteration in original). The trial court's factual findings suggest that Schnabl's son may have appropriated significant company funds. The Court of Appeals reversed, stating:

> The fact that [Son] might have withdrawn the loan amount from the RW Logging account, and used it for his own purposes or to pay business creditors, does not mean that [Schnabl] received no benefit from the loan. A benefit inured to [Schnabl] as soon as Hausam's loan was deposited into the business account. Once the loan was deposited, [Schnabl] could have withdrawn it from the account or could have used it for the business. Alternatively, [Schnabl] also could have left the amount of the loan in the account to accrue interest from which he would benefit. If [Son] abused his father's trust and paid himself excessively from the RW Logging account, [Schnabl's] recourse lies against his son; such action on the part of his son does not negate the fact that Hausam's loan conferred a benefit to RW Logging and to [Schnabl].

*Id*. As applied to the facts of the present appeal, this decision simply reflects that Jefferson received a benefit from the Stevensons' payment. It does not stand for the proposition that Windermere, as a recipient of funds from Jefferson, has received a benefit from the Stevensons that may be recovered through an action for unjust enrichment.

The facts in *Beco* bear no resemblance to the present action. In that case, Beco was the second lowest bidder on a project at INEL. 118 Idaho at 464, 797 P.2d at 864. Beco claimed that the low bidder was not a qualified bidder. *Id*. After unsuccessfully pursuing relief in administrative proceedings and federal court, Beco brought an action for unjust enrichment against the low bidder. *Id*. On appeal, Beco framed the issue as whether it could "recover a benefit which it did not personally convey" to the low bidder. *Id*. at 466 n.2, 797 P.2d at 866 n.2. Noting that "Beco conferred no direct or indirect benefit on [the low bidder]," this Court rejected the claim, concluding that "[t]his court continues to require for an unjust enrichment recovery that the plaintiff confer some benefit on the defendant which would be unjust for the defendant to retain." *Id*. at 467, 797 P.2d at 867. *Beco* provides no support for the Stevensons' position.

In *Harris*, Foxhollow and Johnson were subcontractors for Harris on a project, despite the fact that a single bid had been submitted for the subcontract. 151 Idaho at ___, 264 P.3d at 405. This Court noted the confusing nature of the transaction, apparently due to the parties' efforts to avoid the effect of laws governing public works contracts, stating: "The ultimate

contractual arrangement and division of work between Foxhollow and Johnson is unclear because both companies had written agreements describing much of the same work. But, it is clear that Harris paid Johnson for work on the Fremont Project and Johnson forwarded those payments to Foxhollow." *Id.* at ___, 264 P.3d at 405-06 (footnote omitted).

David Egan was a business manager for Foxhollow. *Id.* at ___, 264 P.3d at 405. Kym Ferguson was an employee and shareholder of Foxhollow. *Id.* at ___, 264 P.3d at 412. After the subcontractors failed to fulfill their contractual obligations, Harris brought suit and, among other claims for relief, sought to recover from Johnson, Egan, and Ferguson for unjust enrichment. *Id.* at ___, 264 P.3d at 410. The district court found that Harris failed to prove that any of these defendants had been unjustly enriched. *Id.* This Court affirmed. *Id.*

Our decision as to Egan and Ferguson is not relevant to the present appeal, as we merely affirmed the district court's determination that Harris conferred no benefit upon these two individuals. *Id.* at ___, 264 P.3d at 411-12. However, our decision to affirm the district court's holding that Johnson was not unjustly enriched warrants further discussion because of a superficial similarity between the transaction in that case and those transactions presented in *Hausam* and the present appeal.

Harris sent three checks to Johnson. *Id.* at ___, 264 P.3d at 410. Two checks were deposited in Johnson's business account, and Johnson then paid Foxhollow identical sums. *Id.* The third check was returned to Harris. *Id.* at ___, 264 P.3d at 410-11. Advancing the same reasoning used by the Court of Appeals in *Hausam*, Harris asserted "that even though Johnson forwarded the payments to Foxhollow, Johnson still received some unearned benefit when it deposited the progress payments in Johnson's account." *Id.* at ___, 264 P.3d at 411. This Court rejected Harris' claim, stating:

> Harris has not shown that it conferred any benefit on Johnson, much less a benefit that equity should reappropriate. As discussed above, the Harris–Johnson–Foxhollow arrangement was convoluted and most likely illegal. Johnson apparently forwarded all progress payments to Foxhollow, except the last one, which Johnson returned to Harris. Thus, Harris' progress payments were a benefit conferred on Foxhollow, not Johnson. Harris has failed to prove that Johnson received any ancillary benefit from Foxhollow's progress payments. And even if Johnson benefited in some insignificant way, Harris was complicit in the Johnson–Foxhollow ruse. Harris therefore will not be heard to complain of unjust results flowing from the agreement.

*Id.* (footnote omitted). This decision reflected Johnson's role as a conduit for funds from Harris

6

to Foxhollow in pursuance of the parties' scheme to circumvent laws governing public works projects. *Hausam* and the present case are unlike *Harris*, in that the recipient of the funds did not merely serve as a conduit for transfer of the funds to a third party. Rather, just as RW Logging was free to use the proceeds of the loan in any fashion it wished in *Hausam*, Jefferson was free to use the funds received from the Stevensons in any fashion it wished. Thus, *Harris* does not support the Stevensons' position in this appeal.

In the present case, Windermere did not appreciate a benefit by receiving the Stevensons' earnest money deposit to be held in trust. Windermere had no unilateral right or authority to dispose of those funds; rather, Windermere simply held the funds for disposition as directed by the terms of the REPSA. When the Stevensons authorized Windermere to forward the deposit to Jefferson, they conferred the $38,000 benefit to Jefferson. Jefferson was free to utilize the funds in any fashion it wished. Although Jefferson subsequently conferred a benefit upon Windermere by paying the $9,500 commission, this was not a benefit the Stevensons conferred upon Windermere. Rather, Windermere received a benefit from Jefferson in the same fashion as would any other creditor.

We are unwilling to expand the doctrine of unjust enrichment to the extent advocated by the Stevensons. If we were to do so, in every situation where an unjustly enriched party transfers some portion of that benefit to a creditor, the party conferring the benefit to the unjustly enriched party could claw back the benefit from the creditor. Such a rule would inject a measure of unreliability into every commercial transaction that is inconsistent with the operation of our market economy. Accordingly, we affirm the decision of the district court.[4]

**B. The constructive trust issue is not properly before the Court.**

On appeal, the Stevensons advance arguments in support of their assertion that a constructive trust ought to be imposed upon the funds Windermere received from Jefferson. However, the Stevensons' complaint advanced only one theory of recovery from Windermere: unjust enrichment. "A cause of action not raised in a party's pleadings may not be considered on summary judgment nor may it be considered for the first time on appeal." *O'Guin v. Bingham Cnty.*, 139 Idaho 9, 15, 72 P.3d 849, 855 (2003) (citing *Beco Const. Co. v. City of Idaho Falls,*

---

[4] Although not necessary to our decision, it is appropriate to make an additional observation. Unjust enrichment is an *equitable* remedy. In this case, Jefferson failed to perform its obligations under the REPSA. The Stevensons had the power to rescind the agreement and obtain full repayment from Jefferson or to assert their vendee lien rights. We can discern no equitable basis for inflicting the consequences of the Stevensons' inexplicable settlement with Jefferson upon Windermere.

7

124 Idaho 859, 865, 865 P.2d 950, 956 (1993)). We therefore decline to address the Stevensons' arguments with regard to the merits of imposing a constructive trust.

**C. The district court did not abuse its discretion when it awarded attorney fees to Windermere pursuant to I.C. § 12-121.**

The Stevensons argue that the district court abused its discretion when it concluded that the Stevensons pursued their claims unreasonably such that Windermere was entitled to an award of attorney fees.

> The decision whether to award attorney fees under I.C. § 12-121 rests in the sound discretion of the district court and will only be reversed where there is an abuse of discretion. In reviewing an exercise of discretion, this Court must consider (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Bingham v. Montane Res. Assoc.*, 133 Idaho 420, 425, 987 P.2d 1035, 1040 (1999) (citations omitted). Attorney fees are only appropriate under I.C. § 12-121 if the court finds "that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1). These circumstances do not exist "[i]f there is a legitimate, triable issue of fact or a legitimate issue of law . . . ." *Kiebert v. Goss*, 144 Idaho 225, 228-29, 159 P.3d 862, 865-66 (2007) (citing *Thomas v. Madsen*, 142 Idaho 635, 639, 132 P.3d 392, 396 (2006)). In the present case, the district court acknowledged the discretionary nature of its decision. It found that the Stevensons did not dispute that Windermere was entitled to a commission pursuant to the Representation Agreement. The court also found that the Stevensons presented no evidence that they, rather than Jefferson, conferred a benefit upon Windermere. Concluding that the Stevensons therefore had not presented any triable issues of fact, nor presented any legitimate issues of law, the district court held that the Stevensons' unjust enrichment claim against Windermere was meritless. We hold that the district court properly exercised its discretion and affirm its award of attorney fees to Windermere.

Since Windermere is entitled to attorney fees below pursuant to I.C. § 12-121, its cross-appeal from the district court's denial of its request for attorney fees pursuant to I.C. § 12-120(1) is moot. *See Fenn v. Noah*, 142 Idaho 775, 779, 133 P.3d 1240, 1244 (2006) (an issue is moot if "a favorable judicial decision would not result in any relief."). We therefore decline to address the issue raised on Windermere's cross-appeal.

8

**D. Windermere is entitled to attorney fees on appeal pursuant to I.C. § 12-121.**

We agree with the reasoning of the district court. Therefore, we award Windermere attorney fees on appeal pursuant to I.C. § 12-121.

## IV. CONCLUSION

We affirm the district court's grant of summary judgment dismissing the Stevensons' unjust enrichment claim against Windermere and its award of attorney fees under I.C. § 12-121. We award attorney fees and costs incurred on appeal to Windermere.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.