384 P.2d 233

C. R. BRUNETTE, Plaintiff-Respondent and Cross-Appellant,

v.

IDAHO VENEER COMPANY, an Idaho Corporation, Defendant-Appellant and Cross-Respondent.

No. 8990.

Supreme Court of Idaho.

Aug. 2, 1963.

E. L. Miller, Coeur d' Alene, for appellant.

James W. Ingalls, Coeur d' Alene, for respondent.

TAYLOR, Justice.

Plaintiff (respondent) was the owner of ranch and timber land near Newman Lake, Washington. In the fall of 1958 he employed one Ludwig to work on the property. Plaintiff testified that he agreed to pay Ludwig $100 per month and to give him the use of a house on the property, with lights, fuel and transportation furnished by the employer; that Ludwig agreed to take care of a few animals on the property, cut Christmas trees, and later to cut and skid logs; that then "we would hire a truck in which to haul;" that Ludwig was not authorized to haul or sell any logs; that the stumpage and all costs and expenses were to be deducted from the proceeds of the sale of logs produced, and the profits were to be divided between the plaintiff and Ludwig. Plaintiff further testified that he had been ill in January, 1959, and did not visit the ranch very often; that sometime between January 25th and 30th, he received a telephone call from a Mr. Siverson, of

the Siverson Lumber Company, advising him that Ludwig was delivering logs to that company; that he approved such delivery provided the company in buying such logs, would place plaintiff's name with Ludwig's, as a payee, on checks executed in payment therefor; that he visited at the ranch and saw Ludwig there on February 3rd, but did not stop Ludwig's logging operations because he thought, having arranged to have his name placed on checks drawn by the Siverson company, that Ludwig could not "get away" with anything; that he was unaware of the delivery of any logs by Ludwig to any other buyer than the Siverson company until February 27th or 28th, when he learned that logs had been delivered to the defendant (appellant); that he then went to the office of defendant and inquired as to the amount of logs delivered to the compnay by Ludwig; that he was advised that Ludwig had been fully paid for the logs delivered. Plaintiff received none of the money paid to Ludwig for the logs.

Mr. Morris, log buyer for defendant, testified that when Ludwig brought in the first load, he asked him if he owned the logs, and "he [Ludwig] said the logs were coming from over at Newman Lake. He said that he had a cutting-logging agreement with Mr. Brunette on the logs. We went out. They were acceptable. We bought them." On cross-examination Morris testified as follows:

...

"Q   Did you ever take any steps to determine the interest of Mr. Brunette in the logs?

"A   No.

"Q   Or do anything to protect him?

"A   No.  No, we satisfied ourselves by Ludwig's own statements."

Ludwig employed others in cutting, skidding, loading and hauling; and absconded, leaving some of the employees unpaid. The plaintiff had three of such employees prepare and file logger's lien claims; he then paid these employees and received assignments of their claims. This action was brought by plaintiff against defendant for conversion of the logs delivered to it by Ludwig, and for foreclosure of the assigned lien claims.

Defendant alleged that Ludwig was plaintiff's agent and employee; that plaintiff had clothed him with apparent authority to deliver and sell the logs in question; that defendant had fully paid Ludwig for all the logs delivered, and was a bona fide purchaser for value and "at all times relied upon the representations of the plaintiff by and through his employees and agents."

From the evidence produced upon trial, the court found the facts as follows:

"On or about December 1, 1958, the plaintiff employed one William Ludwig to cut and skid into a clearing upon his property certain timber. Said Wil-

liam Ludwig was at no time the owner of said logs or timber, and had no right or actual authority at any time to sell or dispose of said logs.

"That the said William Ludwig sold to the defendant logs of the market value of $1,299.25, for which the defendant paid said sum to the said Ludwig, and no part of which was paid to the *defendant* [plaintiff].

"Prior to the sale of the logs to the defendant, said Ludwig had without authorization sold logs to the Siverson Brothers mill. When the plaintiff learned of this, he did not stop the further sale of logs to Siverson Brothers or discharge Ludwig.

"At the time of purchasing the plaintiff's logs from Ludwig, the defendant did not have knowledge of any other sale of logs by Ludwig.

"When the logs were delivered to the defendant by the said Ludwig, Ludwig informed the defendant's agent, Leonard Morris, that he was cutting them under a cutting-logging agreement with the plaintiff. The defendant made no inquiry of the plaintiff as to Ludwig's authority to sell the logs or to collect payment therefor.

"As plaintiff's second, third and fourth causes of action are based upon labor liens for services rendered in cutting, skidding, and hauling the logs, such expense is included in the fair market value for which plaintiff is being reimbursed, in his first cause of action, and the plaintiff should not recover thereon."

From the facts found, the court concluded:

"The defendant did not have knowledge of any act or acts on the part of plaintiff which would clothe the agent Ludwig with apparent or ostensible authority to sell logs at the time that the defendant purchased the said logs from the said agent.

"The defendant could not have relied to its detriment on any knowledge of the act or acts of the plaintiff which would have clothed said Ludwig with apparent or ostensible authority to sell the logs at the time they purchased said logs.

"The defendant was not a bona fide or innocent purchaser in buying said logs as the defendant was advised that the plaintiff had an interest in the logs and made no inquiry as to what the interest of the plaintiff was.

"The defendant has taken possession of the said logs and converted them to their own use to the damage to the plaintiff of $1,299.25."

The evidence supports the findings and conclusions.

Defendant appealed from the judgment entered in favor of the plaintiff for the value of the logs, and plaintiff appealed from the judgment denying recovery on the assigned loggers' liens.

■ There was no issue between the parties as to the market value of the logs delivered by Ludwig to defendant. Plaintiff testified that he considered the amount defendant paid to Ludwig was the fair market value. Likewise the evidence was without conflict that the market value of the logs delivered at the mill included, as a part of the cost of such delivery, the cost of cutting, skidding, loading and hauling. The court properly found that payment to plaintiff of the market value at the mill would reimburse him for the labor claims paid by him, and that he was not entitled to a second recovery therefor.

"Subject to the provisions of this law [Uniform Sales Law], where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell." I.C. § 64–207.

" ＊ ＊ ＊ a seller of personal property can convey no greater title than he had, and it makes no difference that

the purchaser has no notice and is ignorant of the existence of other parties in interest. (Citations) One who buys property must, at his peril, ascertain the ownership; and if he buys of one having no authority to sell, his taking possession in denial of the owner's right is a conversion." Federal Land Bank v. McCloud, 52 Idaho 694, at 703, 20 P.2d 201.

Klam v. Koppel, 63 Idaho 171, 118 P.2d 729; Mitchell v. Munn Warehouse Co., 59 Idaho 661, 86 P.2d 174; 77 C.J.S. Sales §§ 291, 295.

■ The owner of personal property, placing an agent or employee in possession and control thereof, does not thereby clothe such agent or employee with authority to sell such property; nor is possession alone sufficient to estop the owner from asserting his title against one who purchases from such agent or employee in reliance upon the latter's apparent authority to sell. Plummer v. Kingsley, 190 Or. 378, 226 P.2d 297; 3 Am.Jur.2d, Agency, § 100; 46 Am. Jur., Sales, § 460; 77 C.J.S. Sales § 295.

"The apparent power of an agent is to be determined by the acts of the principal, and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal by his acts or conduct has clothed the agent with the appearance of authority,

and not where the agent's own conduct and statements have created the apparent authority." 3 Am.Jur.2d, Agency, § 74, p. 476.

 Here the defendant did not rely upon any acts or representations of the owner, but instead relied upon the fact that Ludwig had possession of the logs, and was satisfied with "Ludwig's own statements" as to his authority. "It is the conduct of the principal, and not the agent, that binds the principal." The authority of an agent cannot be established by the declarations or assumptions of the agent alone. Chamberlain v. Amalgamated Sugar Co., 42 Idaho 604, 247 P. 12. Neither did defendant rely upon the fact that sales were made by Ludwig to the Siverson company, because the defendant knew nothing of such sales. A buyer cannot rely upon conduct of the seller's principal of which he has no knowledge. In re Jackson's Estate, 112 Cal.App. 2d 16, 245 P.2d 684; Swedlund v. Denver Joint Stock Land Bank, 108 Colo. 400, 118 P.2d 460; Ulen v. Knecttle, 50 Wyo. 94, 58 P.2d 446, 111 A.L.R. 565; Encino State Bank v. Tenorio, 28 N.M. 65, 206 P. 698; 19 Am.Jur., Estoppel, § 83. Having been advised that plaintiff had an interest in the logs, it became the duty of defendant to make inquiry as to what that interest was, and defendant was bound to know the facts which such an inquiry would have revealed. Barbour v. Johnson, 201 Or. 375, 269 P.2d 531, 270 P.2d 673; 3 Am.Jur.2d, Agency, § 78; 46 Am.Jur., Sales, § 465.

Judgment affirmed.

Costs to respondent.

McQUADE, McFADDEN and SMITH, JJ., and CRAMER, D. J., concur.