# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47848

MEDICAL RECOVERY SERVICES, LLC,  )
an Idaho limited liability company,   )
                                  )
    Plaintiff-Respondent,   )
                                  )
v.   )
                                  )
MICHAEL D. EDDINS,   )
                                  )
    Defendant-Appellant.   )
_____)

Boise, February 2021 Term

Filed: September 1, 2021

Melanie Gagnepain, Clerk

**SUBSTITUTE OPINION. THE COURT'S PRIOR OPINION DATED JULY 9, 2021 IS HEREBY WITHDRAWN.**

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Jefferson County. Robert L. Crowley, Jr., Magistrate Judge; Stevan H. Thompson, District Judge.

The judgment of the district court is <u>affirmed in part</u>, <u>reversed in part</u>, and the case is <u>remanded</u>.

Lowell N. Hawkes, Chartered, Pocatello, attorney for Appellant. Lowell N. Hawkes argued.

Smith Driscoll and Associates, Idaho Falls, attorneys for Respondent. Bryan D. Smith argued.

_____

BEVAN, Chief Justice.

This is a medical collection case involving two medical bills. Medical Recovery Services, LLC, (MRS) sued Michael Eddins to collect on debts that had purportedly been assigned to MRS by Intermountain Emergency Physicians and Intermountain Anesthesia. After a bench trial, the magistrate court dismissed MRS's complaint, holding MRS lacked standing because it failed to prove a valid assignment occurred. MRS appealed to the district court. That court reversed, holding the magistrate court erred in limiting the admission of two exhibits that MRS relied upon to establish that Eddins' accounts had been validly assigned to it. Alternatively, the district court held Eddins was judicially estopped from raising the assignment issue at trial because he did not raise

1

it earlier during the litigation. Eddins timely appealed to this Court. We affirm in part, reverse in part, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 22, 2014, Eddins went to the emergency room at Eastern Idaho Regional Medical Center (EIRMC) complaining of abdominal pain. Eddins' appendix was removed and other medical services were performed on his behalf. Eddins received medical treatment from Intermountain Emergency Physicians (IEP) and Intermountain Anesthesia (IA) related to these procedures. Eddins did not pay for the services and the two healthcare providers allegedly assigned the accounts to MRS for collection.

On April 20, 2015, MRS filed a complaint against Eddins to collect $996.22 for services he received from IEP, and $1,633.66 for services he received from IA. Eddins filed an answer asserting the charges were not reasonable and demanding a jury trial. Eddins later filed an amended answer and jury demand. On April 4, 2016, MRS filed a motion for summary judgment, which the magistrate court denied after concluding there were material issues of fact regarding the reasonableness of the charges for services provided to Eddins.

The parties waived a jury trial and a bench trial was held on April 24, 2018. At the outset, MRS noted the only issue the court addressed at summary judgment was the reasonableness of the fees and asked whether that would be the only issue for trial. Eddins replied he did not have a problem acknowledging he received treatment in the ER and that there was an appendectomy, but reiterated his concerns about the reasonableness of the charges, stating:

> I believe everything fits within reasonableness. I would stipulate that before the suit was filed, there was [sic] demand made, letters sent, or letter, whatever. There's some documents on that that typically we wouldn't go in; but if he wants to put those in to show that context, I probably wouldn't have a problem with that. And I – in a big scope I do agree that reasonableness is what we're talking about here.

During trial, MRS sought to introduce two exhibits, Exhibit 2 and Exhibit 6, which purported to show the assignment to MRS of Eddins' obligations to IEP and IA. Exhibit 2 is relevant to IEP's claim. It is titled "ASSIGNMENT OF ACCOUNT," and provides, in relevant part:

> WE HEREBY ASSIGN AND TRANSFER OUR CLAIM AGAINST Michael D. Eddins IN THE AMOUNT OF $883.00 OVER TO MEDICAL RECOVERY SERVICES, LLC, WITH FULL POWER AND AUTHORITY TO DO AND PERFORM ALL LEGAL ACTS NECESSARY FOR THE

COLLECTION, SETTLEMENT, COMPROMISE OR SATISFACTION OF SAID CLAIM, EITHER IN THE NAME OF THE UNDERSIGNED OR IN THE NAME OF THE AGENCY.

(Capitalization in original). Exhibit 2 is signed by Kerrie Finuf, the business officer manager of IEP. Exhibit 6 contains identical language but assigns IA's claim for $1,448 against Eddins to MRS. Exhibit 6 is signed by Jennifer Waddell of IA.

At trial, MRS attempted to introduce Exhibits 2 and 6 during Taylor Thomas Lugo's testimony. Lugo is the president of MRS and has no direct connection to either medical entity. Eddins objected on foundation, arguing there was no proof from either medical firm that these were valid assignments. Eddins expressed that he would not object to the admission of Exhibit 2 for the limited purpose of showing MRS relied on it. MRS conveyed that Eddins' foundation objection would be addressed later in the trial when the signatory of Exhibit 2, Ms. Finuf, testified about the document. At that time, MRS agreed to the limited admission of Exhibit 2 solely for the purpose of showing MRS relied on it.

When MRS asked to introduce Exhibit 6, Eddins lodged the same objection, stating, "I don't have a . . . problem, [y]our Honor, for the same reason as the other one, that it's submitted for purposes of showing they relied upon it. They have not made a showing of actual authority." Counsel for MRS replied that he would follow up with an additional witness. The magistrate court ruled it was admitting Exhibit 6 for the limited purpose at that time.

Later in the trial, Finuf testified she had worked for IEP for 14 years and that "her doctors" put her in charge of all the business aspects of the company, which included assigning billing accounts to MRS for collection as needed. MRS then asked the court to admit Exhibit 2 without limitation to show that the account was properly assigned to MRS. Eddins renewed his objection, arguing that Finuf could not give the time or circumstances, or even the identity, of the person who gave her specific authority to make assignments. The magistrate court reserved ruling to allow the parties to submit more briefing on the issue. Both parties submitted post-trial briefing, however, it is not included in the record on appeal, so we are unable to ascertain what the parties argued in regard to the foundation for Exhibits 2 and 6. MRS never called another witness at trial to clarify the foundation for Exhibit 6.

On August 29, 2018, the magistrate court issued its memorandum decision. The court began by noting it had not received testimony or evidence from any officer or director at IEP regarding Finuf's authority to make assignments on its behalf. Likewise, the court did not receive

3

testimony from Jennifer Waddell, the signatory of Exhibit 6, nor did it receive evidence from any officer or director at IA regarding the authority or agency of Ms. Waddell to make assignments for IA. The magistrate court concluded that MRS lacked standing because it failed to prove the individuals who signed Exhibits 2 and 6 had authority to make assignments for either IEP or IA. Accordingly, the magistrate court dismissed MRS's claims against Eddins without reaching any conclusion as to the reasonableness of the charges. The magistrate court later awarded attorney fees and costs against both medical entities.

On January 7, 2019, MRS filed a timely notice of appeal to the district court. There are no documents that were filed with the district court in the record before this Court. On January 23, 2020, the district court entered its opinion and order on appeal, reversing the magistrate court's decision and remanding the case. The district court concluded the magistrate court erroneously disregarded Finuf's testimony about her agency relationship and her authority to assign Eddins' account to MRS. The district court held that both Exhibit 2 and 6 should have been admitted for all purposes based on the testimony of Finuf and Lugo. The district court did not explain why Jennifer Waddell, the signatory of Exhibit 6, was not required to provide testimony similar to Finuf to establish her agency relationship with IA at trial. The district court held the magistrate court abused its discretion when it failed to admit Exhibits 2 and 6 to show there was a legitimate assignment of Eddins' accounts to MRS for collection.

In addition, the district court held that in the interest of justice and fairness Eddins was judicially estopped from raising the assignment issue at trial because he did not object earlier during the proceedings. Specifically, in Eddins' response to MRS's motion for summary judgment, he only challenged the reasonableness of the medical charges—not the assignment to MRS. The district court vacated the judgment and remanded the case to the magistrate court for consideration on the merits of the reasonableness of the fees charged. The district court also awarded MRS attorney fees and costs under Idaho Code sections 12-120(1) and (3), and Idaho Appellate Rules 40 and 41.[1] Eddins filed a timely notice of appeal to this Court.

---

[1] Apparently, on February 6, 2020, Eddins filed a motion for reconsideration. Eddins claims that, contrary to Idaho Rule of Civil Procedure 54(d)(5), the district court did not schedule a hearing or make any ruling on his motion. This claim is based on the duty of a district court to rule on such motions. *See Fisk v. McDonald*, 167 Idaho 870, 892, 477 P.3d 924, 946 (2020) (recognizing that the district court must hear and decide all motions for reconsideration). The trouble with Eddins' claim is that no records from the district court proceedings, including his motion for reconsideration, were made part of the record on appeal before this Court – aside from the transcript of the hearing on

4

## II. STANDARD OF REVIEW

This Court's standard of review for appellate decisions from district courts sitting in an appellate capacity is familiar. We review such decisions by affirming the district court "as a matter of procedure," when a district court affirms a magistrate court's decision:

> When this Court reviews the decision of a district court sitting in its capacity as an appellate court, the standard of review is as follows:
>
>> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.
>
> Thus, this Court does not review the decision of the magistrate court. Rather, we are procedurally bound to affirm or reverse the decisions of the district court.

*Medrain v. Lee*, 166 Idaho 604, 607, 462 P.3d 132, 135 (2020) (quoting *Pelayo v. Pelayo*, 154 Idaho 855, 858–59, 303 P.3d 214, 217–18 (2013)). However, when a district court *reverses* a magistrate court decision, our standard of review is more nuanced, particularly when the question of an agency relationship is involved:

> "[t]his Court has previously viewed the question of whether an agency relationship exists as a question of fact for the [fact-finder] to determine." [*Humphries v. Becker,* 159 Idaho 728, 735 n.2, 366 P.3d 1088, 1095 n.2 (2016)]. But, to be clear, "[w]hether facts sufficient to constitute an agency relationship exist is indeed a question of fact for the [fact-finder], however, whether a given set of facts are

---

oral argument before the district court. Eddins' counsel noted that the record included a document that included a listing of the "Events and Orders of the Court." This is true. But that document is simply like a table of contents that lists the Register of Actions, *see* I.A.R. 28(b)(1)(A), which includes a listing of all the filings that occurred in the case. Simply having that document as part of the record does not mean that the relevant documents themselves were made a part of the record. Idaho Appellate Rule 28(b) identifies the contents of a "Standard Record." Conspicuously absent from the documents included in the Standard Record are any motions, briefs or other similar papers. To be fair, Eddins did request "*all* filings on appeal to the district court" be included in the record on appeal, however, he did not confirm they were ultimately made part of the record. It is incumbent upon appellate counsel to ensure that any such documents are included in the record by either (1) moving to add documents to the record within 28 days of the date of service of the record, I.A.R. 29(a), or by (2) moving to augment the clerk's or agency's record pursuant to Idaho Appellate Rule 30(a). It is well established that "[t]he appellant has the obligation to provide a sufficient record to substantiate his or her claims on appeal." *Indian Springs LLC v. Indian Springs Land Inv., LLC*, 147 Idaho 737, 751, 215 P.3d 457, 471 (2009) (quoting *W. Cmty. Ins. Co. v. Kickers, Inc*., 137 Idaho 305, 306, 48 P.3d 634, 635 (2002)). This Court will not presume error below in the absence of a record that is adequate to review the appellant's claims. *Id*. Thus, while we do not conclude that it makes a difference in our decision today, we are precluded from considering any grievance related to the district court's alleged inaction in failing to rule on Eddins' motion for reconsideration.

5

sufficient to constitute an agency relationship is a question of law appropriate for this Court's consideration." *Id.*

Accordingly, a [trial] court may, as a matter of law, make a preliminary finding that there are insufficient facts to constitute an agency relationship. In other words, a [trial] court may preliminarily find that no facts suggest an agency relationship exists.

*Nelson v. Kaufman*, 166 Idaho 270, ___, 458 P.3d 139, 145 (2020) (internal citation omitted).

Thus, in this case we are called upon to review the trial court record and determine, as a matter of law, whether the magistrate court's conclusion that no agency relationship existed is correct. We owe no particular deference to the district court's decision in cases like this one, where the district court reversed the magistrate court.

A trial court's evidentiary rulings are reviewed under the abuse of discretion standard. *Dep't of Fin., Sec. Bureau v. Zarinegar*, 167 Idaho 611, 625, 474 P.3d 683, 697 (2020). When this Court reviews an alleged abuse of discretion, it asks whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). A court's improper exclusion of evidence will be overturned on appeal if it affects a party's substantial right. *Perception Const. Mgmt., Inc. v. Bell*, 151 Idaho 250, 253, 254 P.3d 1246, 1249 (2011) (citing I.R.E. 103; I.R.C.P. 61(a*); Burgess v. Salmon River Canal Co., Ltd.*, 127 Idaho 565, 574, 903 P.2d 730, 739 (1995)).

"Jurisdictional issues, like standing, are questions of law, over which this Court exercises free review." *Valencia v. Saint Alphonsus Med. Ctr. - Nampa, Inc.*, 167 Idaho 397, ___, 470 P.3d 1206, 1209 (2020) (quoting *Westover v. Idaho Cntys. Risk Mgmt. Program*, 164 Idaho 385, 388, 430 P.3d 1284, 1287 (2018)). "Similarly, this Court has free review over whether dismissal for lack of jurisdiction was properly granted." *Id.* (quoting *Tucker v. State*, 162 Idaho 11, 17, 394 P.3d 54, 60 (2017)). A claimant must be the real party in interest to have standing to sue. I.R.C.P. 17(a). A party's standing as the real party in interest can be raised "at any time." *Houpt v. Wells Fargo Bank, Nat. Ass'n*, 160 Idaho 181, 186, 370 P.3d 384, 389 (2016).

### III. ANALYSIS

This appeal presents three primary issues, apart from whether attorney fees should be awarded on appeal. The first two are interconnected and if resolved in MRS's favor, would preclude Eddins

from pursuing this appeal. As such, those issues will be discussed first, even though the merits of the admissibility of the exhibits and the ultimate question of MRS's standing are truly the core of the matter before us.

**A.** **The district court improperly applied the doctrine of judicial estoppel in this case.**

*1. Judicial Estoppel is inapt since Eddins never changed positions in this case.*

Eddins appeals the district court's determination that he was judicially estopped from challenging the assignment of his accounts to MRS. The district court held Eddins did not sufficiently challenge assignment of the accounts to MRS because he did not object to the validity of the assignments prior to trial. The district court recognized that Eddins had several opportunities to argue the validity of the assignments, but instead took the position that the only issue at trial would be the reasonableness of the medical charges. The district court held in the interest of justice and fairness, Eddins would be judicially estopped from bringing the argument regarding the validity of the assignments on remand.

Idaho adopted the doctrine of judicial estoppel in *Loomis v. Church*, 76 Idaho 87, 277 P.2d 561 (1954). Judicial estoppel is a doctrine that "precludes a party from advantageously taking one position, then subsequently seeking a second position that is incompatible with the first." *McGimpsey v. D&L Ventures, Inc.*, 165 Idaho 205, 216, 443 P.3d 219, 230 (2019) (quoting *McCallister v. Dixon*, 154 Idaho 891, 894, 303 P.3d 578, 581 (2013)).

> The policies underlying preclusion of inconsistent positions are general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings. . . . Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts . . . Because it is intended to protect the dignity of the judicial process, it is an equitable doctrine invoked by a court at its discretion.

*McKay v. Owens*, 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997) (quoting *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 601 (9th Cir. 1996)). Judicial estoppel is intended to "prevent abuse of the judicial process by deliberate shifting of positions to suit the exigencies of a particular action." *Lawrence v. Hutchinson*, 146 Idaho 892, 900, 204 P.3d 532, 540 (Ct. App. 2009) (quoting *McKay*, 130 Idaho at 153, 937 P.2d at 1227).

Eddins argues the district court erroneously applied the doctrine of judicial estoppel in this case. We agree. Judicial estoppel is intended to prevent abuse of the judicial process "by deliberate *shifting* of positions." *Lawrence*, 146 Idaho at 900, 204 P.3d at 540 (emphasis added). Eddins' failure to challenge the validity of the assignments prior to trial is not equivalent to taking a

7

position and then changing course later in proceedings. Further, although not acknowledged by the district court, Eddins' amended answer specifically denied paragraph 3 of MRS's complaint. Paragraph 3 states ". . . before the commencement of this action the debt herein sued upon was assigned by [IEP] and [IA] to [MRS] for the purpose of collection. [MRS] is now the holder thereof for such purposes." Thus, although Eddins did not raise specific arguments related to the assignments at summary judgment, it was erroneous to conclude Eddins took inconsistent positions on the issue when he plainly denied that the assignments were valid in his responsive pleading.

Finally, "standing is jurisdictional and may be raised at any time." *Koch v. Canyon Cnty*., 145 Idaho 158, 162, 177 P.3d 372, 376 (2008); *See also Houpt v. Wells Fargo Bank, Nat. Ass'n*, 160 Idaho 181, 186, 370 P.3d 384, 389 (2016) (recognizing that a challenge to a party's standing as the real party in interest can be raised "at any time."). Eddins was permitted to challenge MRS's standing in the case "at any time," including during the trial. Thus, the district court's application of judicial estoppel as grounds for reversal was erroneous.

 *2. The validity of the assignments was not "deemed established" at summary judgment.*

Next, Eddins argues "[t]he district court's application of judicial estoppel effectively gave MRS its 'deemed established' contention argued in its appeal brief." Apparently MRS argued in its appeal to the district court that Eddins' failure to contest standing during MRS's motion for summary judgment deemed standing "established" for purposes of that issue at trial. Regrettably, Eddins did not include any briefing submitted to the district court with the record on appeal; thus, we are unable to discern what arguments gave rise to this conclusion. We recognize that Eddins did request these documents in his notice of appeal, however, ultimately he did not ensure they were included with the record on appeal. As we note above, *see supra*, n.1, it is well established that "[t]he appellant has the obligation to provide a sufficient record to substantiate his or her claims on appeal." *Indian Springs LLC v. Indian Springs Land Inv., LLC*, 147 Idaho 737, 751, 215 P.3d 457, 471 (2009) (quoting *W. Cmty. Ins. Co. v. Kickers, Inc.*, 137 Idaho 305, 306, 48 P.3d 634, 635 (2002)). This Court will not presume error below in the absence of a record that is adequate to review the appellant's claims. *Id.*; *see also Dep't of Fin., Sec. Bureau v. Zarinegar*, 167 Idaho 611, 627, 474 P.3d 683, 699 (2020) (quoting *State v. Garcia-Rodriguez*, 162 Idaho 271, 276, 396 P.3d 700, 705 (2017) (We do not presume error on appeal; the party alleging error has the burden of showing it in the record.").

Still, when "the challenged conduct is likely to evade judicial review and thus is capable of repetition," *State v. Vasquez*, 163 Idaho 557, 560, 416 P.3d 108, 111 (2018), it is appropriate for this Court to comment – and we will do so here. This issue is likewise intertwined with the judicial estoppel issue and thus merits our comment. We take this opportunity to reiterate that a lower court's denial of summary judgment, by itself, does not establish any facts for trial. The magistrate court focused solely on the reasonableness of medical charges at summary judgment. That does not, in any way, deem all other issues or facts, particularly issues not raised at that time, established for trial.

Beyond that, as Eddins argues, MRS could have sought an order under Idaho Rule of Civil Procedure 56(f), stating the assignment issue was not genuinely in dispute so it could be treated as established for trial. MRS failed to do so. Rule 56(f) provides: "If the court does not grant all the relief requested by the motion [for summary judgment], it may enter an order stating any material fact, including an item of damages or other relief, that is not genuinely in dispute and treating the fact as established in the case." I.R.C.P. 56(f). When the trial court has specified facts that are without substantial controversy, they "shall be deemed established, and the trial shall be conducted accordingly." *Coeur d'Alene Mining Co. v. First Nat. Bank of N. Idaho*, 118 Idaho 812, 820, 800 P.2d 1026, 1034 (1990) (quoting what was then codified as I.R.C.P. 56(d)).

MRS did not ask for, nor did the magistrate court enter, any such order. Additionally, unlike *Coeur d'Alene Mining Company*, where the trial court specifically held two facts were deemed established for trial, the magistrate court's denial of summary judgment here did not establish any facts related to the legitimacy of the assignments from IEP or IA to MRS. The only fact Eddins affirmatively conceded at summary judgment was that he received services from IEP and IA. Once MRS's motion for summary judgment was denied, the *entire case* went to trial, including whether MRS had standing to assert rights on behalf of the medical providers. Further, as noted above, "standing is jurisdictional and may be raised at any time." *Koch*, 145 Idaho at 162, 177 P.3d at 376. Whether MRS received a valid assignment of the claims from IEP or IA goes directly to MRS's standing in the case, and Eddins was not precluded from objecting to MRS's proof of standing offered at trial.

**B. We affirm the district court's holding that the magistrate court abused its discretion by limiting the admission of Exhibit 2. However, the district court erred regarding Exhibit 6.**

9

A primary question we must resolve in this appeal is whether to affirm the district court's conclusion that the magistrate court abused its discretion in not admitting Exhibits 2 and 6 for all purposes. The district court held that both "Exhibits 2 and 6 should have been admitted for all purposes based upon the testimony of Ms. Finuf and Taylor Lugo." The district court's opinion offers little reasoning for this conclusion. While the district court's appellate opinion makes reference to the four-prong abuse of discretion standard in its iteration of the standard of review, the court failed to analyze which of these prongs the magistrate court abused in failing to admit Exhibits 2 and 6 for all purposes.

"There are generally two issues regarding the admission of evidence. The first is whether the evidence is relevant, and the second is whether a proper foundation has been laid for its admission." *Slack v. Kelleher*, 140 Idaho 916, 921, 104 P.3d 958, 963 (2004). These are two separate issues. Relevance is an issue of law. *Id*. (citing *State v. Page*, 135 Idaho 214, 16 P.3d 890 (2000)). Whether or not a proper foundation has been laid for the admission of the evidence is a discretionary decision to be made by the trial court. *Id*. (citing *State v. Sheahan*, 139 Idaho 267, 77 P.3d 956 (2003)). As noted above, we apply the four-prong *Lunneborg* test in determining whether the trial court abused its discretion. *See Lunneborg*, 163 Idaho at 863, 421 P.3d at 194.

There is no question that Exhibits 2 and 6 are both potentially relevant to MRS's claims. In addition to being relevant, the documents must be authentic. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." I.R.E. 901(a). Authentication of a writing may be made by a witness with knowledge – that "an item is what it is claimed to be." I.R.E. 901(b)(1).

*1. Exhibit 2 was authenticated by Ms. Finuf and was admissible for all purposes.*

Although the district court cited Rule 901, its limited analysis failed to resolve whether either Exhibit 2 or 6 was ultimately authenticated. The court simply made the conclusory statement that both "Exhibits 2 and 6 should have been admitted for all purposes based upon the testimony of Ms. Finuf and Taylor Lugo." While we conclude that the district court's conclusion as to Exhibit 2 is correct, the scant analysis requires that we, notwithstanding our standard of review to simply review the district court's opinion "as a matter of procedure," determine whether the magistrate court abused its discretion in failing to admit Exhibit 2 for all purposes.

10

The admissibility of a document as evidence requires laying a foundation for its admissibility by preliminary authentication of the document on sufficient prima facie proof, whether by direct or circumstantial evidence. Authenticity is a preliminary matter for the court to decide, in the trial court's discretion, as a question of fact. Once a prima facie case for authenticity of proffered evidence is established, the evidence is admitted and the ultimate question of authenticity is decided by the fact finder.

32A C.J.S. *Evidence* § 1069 (footnotes omitted).

Here, the magistrate court admitted Exhibits 2 and 6 for a limited reason to show MRS had relied on them, but not for all purposes. "All purposes" would include using the documents' contents to prove that Eddins' accounts were properly assigned to MRS. While the magistrate court did not cite to Idaho Rule of Evidence 104(b), we conclude that the rule is implicated in its decision. Rule 104(b) provides that "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later." A review of the transcript and the magistrate court's oral rulings regarding both exhibits leads this Court to conclude that the magistrate court admitted the exhibits conditionally pursuant to Rule 104, with the expectation, as promised by MRS's counsel, that MRS would call additional witnesses to establish that Finuf and Waddell had actual authority to assign IEP and IA's claims to MRS.

While MRS promised to produce witnesses (in addition to the testimony offered by Lugo) to shore-up the agency meant to be established by both exhibits, it only called Finuf to testify about Exhibit 2. On appeal, MRS contends that once both exhibits were admitted they should have been considered for all relevant purposes. This argument misinterprets the magistrate court's rulings made during the trial. The magistrate court admitted both exhibits conditionally, and their admissibility for *all purposes* depended on "the condition that the proof be introduced later." *See* I.R.E. 104(b). Thus, the question, as to Exhibit 2 is whether that proof did come later, and whether the magistrate court abused its discretion in failing to admit Exhibit 2 based on that proof. The district court's statement that the magistrate court's admission of Exhibits 2 and 6 for a limited purpose "would imply that a proper foundation was laid" is an erroneous statement of law. That foundation, in the magistrate court's discretion, could only be made once MRS presented the additional evidence it had promised.

Our focus on appeal is thus on the third prong of the abuse of discretion test: whether the magistrate court "acted consistently with the legal standards applicable to the specific choices

11

available to it," *see Lunneborg*, 163 Idaho at 867, 421 P.3d at 198, in refusing to admit Exhibit 2 for all purposes after Finuf testified.

We begin by noting that Lugo's testimony, as the president of MRS, was insufficient to authenticate Exhibit 2 on its own. It was during this initial testimony that MRS attempted to admit both Exhibits 2 and 6. The following discussion took place:

> COUNSEL FOR EDDINS: I have a problem with foundation, Your Honor. I'll allow it in for the limited purpose of them having relied on it.
>
> THE COURT: [COUNSEL FOR MRS], do you want to respond?
>
> COUNSEL FOR MRS: Your Honor, I will – Kerrie Finuf is here and I will – we'll go over that when she testifies. But for – so at the moment I'm okay with it being allowed for the limited purpose of showing they relied on it.
>
> THE COURT: Very well. The [c]ourt will allow [Exhibit 2] at this point for that limited purpose.

Thus, MRS essentially stipulated that Lugo's testimony alone was insufficient to admit Exhibit 2 for all purposes. The magistrate court admitted the exhibit during Lugo's testimony *for a limited purpose* based on MRS's counsel's assurance. In addition, Lugo's signature does not appear on the document and the fact that Exhibit 2 bore MRS's business address at the top of it is of no moment. Thus, the district court erred in relying on Lugo's testimony as a basis to admit the exhibit.

That said, MRS did, as promised, present testimony from Finuf. Her testimony included the following exchange:

> Q. [by counsel for MRS]. . . . A moment ago we discussed – it was labeled as Exhibit 2, which was the Assignment of Account document that – which you signed. Are you familiar with that document?
>
> A. Yes.
>
> Q. I guess the pending – looming question is out there, do you have authorization as agent for Intermountain Emergency Physicians to sign those assignments of account?
>
> [Counsel for Eddins]: Objection, conclusion. . . . Lacks foundation.
>
> . . . .
>
> Q. Kerrie, can you explain -- can you tell us a little of your background with Intermountain Emergency Physicians?
>
> A. Yes. I've worked for the doctors for l4 years. I am their business office manager and I work directly with our billing group in Oklahoma City.

Q. Okay. As such, are you familiar with all of the billing statements, the documents that [IEP] sends out either directly or through their billing company?

A. Yes.

Q. Who authorizes the assignment of accounts to [MRS] for [IEP]?

A. I do.

Q. So in your position over the last 16 [sic] years, you've been giving the – given the authority to assign those accounts as needed?

A. Yes. My doctors put me charge of all the business aspects of our company.

Q. Okay. Thank you. So with that foundation, Kerrie, are you – obviously, are you the authorized account assignor in this case?

A. I would say yes, I am.

Based on this testimony it is established that Finuf was a person "with knowledge" sufficient to authenticate Exhibit 2. I.R.E. 901(a). MRS needed "only make a prima facie showing of authenticity so that a reasonable [fact-finder] could find in favor of authenticity or identification. . . . Once the prima facie case for authenticity is met, the probative value of the evidence is a matter for the [fact-finder]. *United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996) (internal citations and quotations omitted). Thus, once authenticated, Exhibit 2 was admissible.

The magistrate court abused the third prong of its discretion by requiring additional proof in the form of (1) testimony from an officer or owner of IEP; or (2) additional documentation establishing Finuf's authority to sign agreements on IEP's behalf in order to admit the exhibit. While such testimony would have given greater weight to Finuf's testimony regarding her status as IEP's agent, (which question was left to the magistrate court as fact-finder on the merits, as will be discussed below) such evidence was not required to authenticate Exhibit 2 for purposes of its admissibility. The magistrate court's failure to admit the evidence based on that erroneous factual prerequisite was clearly erroneous. *See Latvala v. Green Enterprises, Inc.*, 168 Idaho 686, ___, 485 P.3d 1129, 1137 (2021) ("The Court will not set aside the trial court's findings of fact unless they are clearly erroneous . . . .").

*2. Exhibit 6 was never authenticated and was thus inadmissible.*

The admissibility of Exhibit 6 is much different than Exhibit 2. Once again, the exhibit was admitted pursuant to Idaho Rule of Evidence 104(b), subject to the introduction of additional proof. However, that proof never came. Of note, Jennifer Waddell, whose signature appears on Exhibit

6 never testified, nor did any other officer or agent of IA. As stated above, the testimony of Lugo was insufficient to authenticate the document. The magistrate court's decision to limit the document's admission was based on the promise of MRS's counsel that he would "follow up with . . . [E]xhibit [6] with an additional witness later." That promise never materialized. Thus, the district court erred in holding that Lugo and Finuf provided adequate foundation for Exhibit 6. Without any witness, other than Lugo, and without any direct proof of the assignment, the magistrate court was correct to limit Exhibit 6's admissibility.

**C.**     **We affirm the district court's holding that MRS was IEP's agent for purposes of prosecuting this case. We reverse the district court's decision regarding IA's claim.**

Having determined that Exhibit 2 should have been considered for all purposes, but that Exhibit 6 should not, we turn now to whether the district court was correct to hold that substantial evidence supports the agency relationship between MRS and the two medical entities.

"This Court has previously viewed the question of whether an agency relationship exists as a question of fact for the [trier of fact] to determine." *Nelson v. Kaufman*, 166 Idaho 270, ___, 458 P.3d 139, 145 (2020) (quoting *Humphries v. Becker,* 159 Idaho 728, 735 n.2, 366 P.3d 1088, 1095 n.2 (2016)). But even though that is obviously the case, "whether a given set of facts are sufficient to constitute an agency relationship is a question of law appropriate for this Court's consideration." *Id.* This is simply a restatement of the black-letter principle that this Court reviews the sufficiency of the evidence to determine whether a fact-finder, here the magistrate court, made a legally sound decision based upon the record before it. "Substantial evidence does not require that the evidence be uncontradicted. . . . Rather, the evidence need only be of sufficient quantity and probative value that reasonable minds could conclude that the [fact-finder's conclusion] was proper." *SilverWing at Sandpoint, LLC v. Bonner Cnty.*, 164 Idaho 786, 794, 435 P.3d 1106, 1114 (2019).

The magistrate court gave no weight to Exhibit 2. It determined that Finuf's testimony was insufficient to establish that the account from IEP had been validly assigned to MRS because "she could not identify any document, any person or any circumstance wherein she was specifically authorized to make legal assignments for purposes of lawsuits. [And] no principal of [IEP] testified as to having given her that authority." The magistrate court relied on *Brunette v. Idaho Veneer Company*, 86 Idaho 193, 384 P.2d 233 (1963), in which this Court held:

14

> The apparent power of an agent is to be determined by the acts of the principal, and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct and statements have created the apparent authority.

*Id*. at 198–99, 384 P.2d at 236 (citing 3 Am. Jur. 2d, *Agency*, § 74, p. 476).

In addition, as has been noted about Exhibit 6, the magistrate court remarked that it received no testimony or evidence from any officer or director of IA regarding the granting of authority or agency to Jennifer Waddell to make assignments for IA, nor did Waddell testify. Thus, the court determined it did not have adequate information to establish a valid assignment from IA to MRS.

After declining to admit the exhibits beyond their stated "limited purpose," the magistrate court held MRS "failed to establish assignment to it of the claims from both Intermountain Emergency Physicians and Intermountain Anesthesia."

On intermediate appeal, the district court found *Brunette* to be distinguishable because it involved apparent authority where the principal showed no outward signs of cloaking the supposed agent in authority. Conversely, here, the district court found that IEP held Finuf out as its agent with *actual authority* – by putting her in charge of all business matters and allowing her to make assignments of accounts similar to Eddins' for nearly 14 years. Actual authority "is that authority a principal expressly grants to an agent or impliedly confers on an agent because it is usual, necessary, and proper to achieve the object of the express authority granted to the agent." *Primera Beef, LLC v. Ward*, 166 Idaho 180, ___, 457 P.3d 161, 166 (2020) (internal quotation omitted).

The district court's holding was based on Finuf's own testimony that "[her] doctors put [her] in charge of all the business aspects of [IEP]" and that she had been in her position for the last 14 years. Her testimony as set forth above establishes the district court's legal conclusion by substantial evidence.

The district court found the more applicable case to be *Simplot Soilbuilders, Inc. v. Leavitt*, 96 Idaho 17, 523 P.2d 1363 (1974), in which this Court held:

> While an agency relation cannot be proved by the extra-judicial statements and declarations of one purporting to act as agent, the fact of agency, when it rests in a parol agreement, may be established at trial by the testimony of the agent h[er]self. The agent's extra-judicial statements are mere hearsay, but at trial the agent's testimony concerns [her] relationship to the alleged principal. The relationship

15

being in issue and the witness being subject to cross-examination, the agent's testimony cannot be termed hearsay.

*Id.* at 18, 523 P.2d at 1364 (citing *Killinger v. Iest*, 91 Idaho 571, 576, 428 P.2d 490, 495 (1967)).

The district court appropriately applied *Simplot Soilbuilders* to the question before it. An agent's actual authority may be established by her direct testimony. Finuf did just that in this case. She testified that in her role as office manager with 14-years' experience at IEP, Finuf had actual authority to enter contracts on IEP's behalf. Nothing contradicted her testimony and the magistrate court's reliance on *Brunette*, an *apparent authority* case, was misplaced. *Brunette* remains good law for the proposition for which it stands: an agent's *apparent authority* may not be established by the testimony of the agent alone. *See Brunette,* 86 Idaho at 198–99, 384 P.2d at 236. On the other hand, an agent herself may establish *actual authority* based on her direct testimony. Thus, we conclude, as a matter of law, that substantial evidence in the record established Finuf's authority to assign Eddins' account to MRS. The district court correctly found that Finuf was an agent of IEP. As an agent of IEP, she had the requisite authority to imbue MRS with authority and standing to pursue IEP's claims against Eddins. We affirm the district court's holding that sufficient evidence supported the agency relationship between MRS and IEP.

The district court's decision as to IA's claim, however, is reversed. Without the full weight of Exhibit 6 and any testimony from Waddell or someone with direct knowledge of IA's business structure, IA's assignment of its claim to MRS was never established. MRS thus lacked standing to bring the IA's claims against Eddins and those claims were properly dismissed.

### D.     Issues upon remand.

Given our holding in this case, we remand this case to the district court with the following directions:

1. Reinstate the judgment in Eddins' behalf against MRS as to IA's claims.

2. Remand the case to the magistrate court with directions for the magistrate court to (1) make additional conclusions of law as to the reasonableness of IEP's charges. This determination is to be made from the findings of fact the magistrate court already entered after the original trial, without taking additional evidence or testimony; (2) rule on which party prevailed; and (3) based thereon, revisit the attorney fees originally awarded to Eddins, giving due consideration for his prevailing on this appeal as to IA's claims; (4) award Eddins appellate attorney fees incurred in the district court appeal as to IA's claims; (5) based upon its prevailing party finding, determine the extent to which either party is entitled to attorney fees from the magistrate and district

16

court proceedings; and (6) as set forth below, based on that same prevailing party finding, determine whether either party is entitled to its attorney fees incurred on appeal.

**E.** **Eddins is awarded attorney fees as to IA's claims; neither party is entitled to attorney fees and costs on appeal regarding IEP's claims.**

Both parties request attorney fees and costs on appeal under Idaho Code section 12-120(1) and (3). Since we have reinstated the original judgment against IA's claims assigned to MRS, Eddins has prevailed as to that claim and is awarded attorney fees on appeal against IA. Eddins will be entitled to one-half of his appellate attorney fees and costs for his appeal to this Court.

However, as to IEP's claims that were assigned to MRS, we have generally held that all claims in an action must be resolved before a court may determine the prevailing party. *Berian v. Berberian*, 168 Idaho 394, ___, 483 P.3d 937, 954 (2020); *but see Lola L. Cazier Revocable Tr. v. Cazier*, 167 Idaho 109, 123, 468 P.3d 239, 253 (2020) (awarding apportioned attorney fees on appeal to the respondent, even though the case was remanded for the district court to resolve one simple issue). Still, this Court has generally declined to award attorney fees on appeal when the case is remanded for further proceedings. *See Porcello v. Estate of Porcello*, 167 Idaho 412, ___, 470 P.3d 1221, 1237 (2020). This is particularly applicable to the case here, where this matter is being remanded to the magistrate court (as set forth above).

We thus decline to award attorney fees at this juncture as to IEP's claim. Upon the magistrate court's entry of a final judgment deciding MRS's remaining (IEP) claim below, the magistrate court can determine which party has prevailed and whether that party is entitled to attorney fees related to this appeal. *Berian*, 168 Idaho at ___, 483 P.3d at 954.

## IV. CONCLUSION

We affirm the district court's decision on the magistrate court's abuse of discretion in limiting the admission of Exhibit 2. We likewise affirm the district court's conclusion about IEP's standing in this case. We reverse all other issues as set forth above. We award Eddins' attorney fees and costs as to IA's claims as set forth above.

JUSTICES BRODY, STEGNER MOELLER and BURDICK, CONCUR.